IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **APRIL RENEE LEWIS,** | |
| **Plaintiff,** | Case No. 2:14-cv-2335 |
| v. | Chief Judge Edmund A. Sargus, Jr. |
| **COMMISSIONER OF SOCIAL SECURITY,** | Magistrate Judge Elizabeth P. Deavers |
| **Defendant.** | |

## REPORT AND RECOMMENDATION

Plaintiff, April Renee Lewis, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the Court by consent of the parties for consideration of Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF Nos. 9 & 10). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

### I.   BACKGROUND

Plaintiff filed her application for benefits on May 30, 2012, alleging that she has been disabled since September 12, 2008. (R. at 191-206.) Plaintiff alleges disability from fibromyalgia. (R. at 14.) Plaintiff's applications were denied initially and upon reconsideration.

1

(R. at 122-130, 137-143.)  Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 144-145.)

Administrative Law Judge H. Munday ("ALJ") held a hearing on March 18, 2014, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 488-510.)  On May 21, 2014, the ALJ issued a decision finding that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-21.)  On September 24, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-7.)  Plaintiff then timely commenced the instant action.  (ECF No. 1.)

## II.  HEARING TESTIMONY

### A. Plaintiff's Testimony

At the administrative hearing, Plaintiff claimed that she has "all the symptoms that go with fibromyalgia," including persistent pain "[a]ll over."  (R. at 492.)  When asked by her attorney why she thought she could not work, plaintiff testified that she has "a lot of issues with the pain.  They haven't been able to resolve the pain issues."  (R. at 491.)  She said that her condition has also caused unresolved sleep issues and that her prescribed medication "isn't working."  (*Id.*)  As a result, according to Plaintiff, she is "exhausted all the time."  (R. at 492.)

Plaintiff testified that the pain in her neck and back are "usually the worst," but she said that she experiences pain "all over."  (*Id.*)  According to Plaintiff, she also experiences pain in her hands and knees.  (*Id.*)  Plaintiff also testified that her hands and knees "tingle [and] fall asleep," causing her to drop things and sometimes trip and fall.  (*Id.*)

Plaintiff claimed that her prescribed medication has been generally ineffective in controlling the pain.  According to Plaintiff, "[t]here's a level of pain all the time even with the

2

medication." (R. at 493.) Plaintiff testified that the pain level fluctuates, but worsens "especially if I exert myself." (*Id*.) Plaintiff also stated that weather can aggravate her pain symptoms. (R. at 494.) She characterized her pain as sometimes "stabbing," at other times a "dull ache," and testified that her pain symptoms "can be sharp, dull, throbbing. . . . tingling, numbness." (*Id*.)

In describing her daily activities, Plaintiff testified that she ordinarily does not get dressed immediately after getting out of bed unless she has an appointment. (R. at 497.) According to Plaintiff she ordinarily makes herself a simple breakfast, "like yogurt . . . with some fruit and granola." (*Id*.) Plaintiff stated that she then usually makes phone calls or takes care of paperwork while she sits "trying to ease the stiffness and the soreness out some." (*Id*.) Plaintiff testified that she would then attempt to get up, move around, "go out and try to walk . . . about 15 minutes—10, 15 minutes walking and then back," although she claimed that on some days she is unable. (R. at 497-498.)

Plaintiff further testified that she does do some housework. (R. at 515.) Plaintiff said that she tries to do the dishes but sometimes cannot for five or six days in a row. (R. at 501.) She said she has similar difficulties doing laundry, but will fold clothes while sitting on the couch after her husband carries them into the room for her. (R. at 502.) According to Plaintiff she does vacuum and sweep, although "as little as possible because it does hurt." (R. at 515.)

Plaintiff testified that she often drops things, such as dishes and groceries. (R. at 503.) When asked about her ability to lift, Plaintiff claimed that her doctors told her to lift only five pounds or less at a time. (R. at 502.) Plaintiff's attorney, however, acknowledged that Plaintiff's claim is not documented in the record. (*Id*.) When asked about her ability to stand, Plaintiff testified that after five minutes, she begins to experience pain. (R. at 503.) She also stated that

3

she can sit for up to one half hour, but then becomes "stiff and sore." (R. at 503-504.) Plaintiff also testified, when asked about using her hands for small tasks, that her handwriting "isn't very good" and that she does not write much because pain, swelling, and stiffness in her hands cause her to stop. (R. at 504.) She also claimed that "even holding a book" causes tingling and numbness in her hands. (*Id.*) When asked about her ability to bend, Plaintiff claimed that it causes pain and shortness of breath and that she usually has to sit down in order to bend to the floor. (R. at 504-505.) She also claimed that she cannot usually bend at the waist in order to touch her knees. (R. at 505.) Plaintiff testified that she cannot lie on her back or stomach comfortably. (R. at 518.) She also stated that she suffers "migraines" three or four times per month that prevent her from getting out of bed at all.

    Plaintiff testified that she is able to take care of her husband's medical paperwork and make medical and business phone calls that he is unable to place for himself. (R. at 507.) She also monitors his daily medications and makes his medical appointments. (R. at 509.) According to Plaintiff, she documents these by writing information on a calendar and writing notes. (R. at 510.) Plaintiff stated that she has a driver's license and does drive to go shopping and visit the library "a couple of times a week." (R. at 511.) She claimed that she is able to take things off the shelf and put them into her cart "[i]f they aren't too heavy," but she stated she requires assistance if she has to bend down. (R. at 512.) Plaintiff also testified that she occasionally drives to visit her grandchildren or a friend. (R. at 513.)

    When asked about the side effects of her medication, Plaintiff testified that she experiences drowsiness and dizziness, as well as digestive problems. (R. at 517.) Plaintiff stated that she also exercises and uses ice packs in order to treat her pain symptoms. (R. at 517-518.)

### III.    MEDICAL RECORDS

#### A.  Margaret L. Leonhard, Psy.D.

On July 20, 2012, Plaintiff saw Margaret L. Leonhard, Psy.D., for a psychological evaluation.  (R. at 357-363.)  During the evaluation, Plaintiff discussed her activities of daily living and reported that she does "the majority of household stuff and just have my husband sign things."  (R. at 359.)  She also reported that she performs the household chores, cares for the pets, prepares meals, shops, and pays the family bills.  (*Id*.)  Plaintiff also stated that she watches television, listens to music, uses a computer, reads, and attends church.  (*Id*.)

#### B.  Memorial Health System

On July 24, 2012, Dr. Alex D. Minard, MD reported that, upon examination, Plaintiff "had all 18 of the typical tender points of fibromyalgia."  (R. at 371.)  He also reported Plaintiff's description of her pain as "constant" and "diffuse muscle and joint pain."  (*Id*.)  During the exam, Plaintiff described her pain as "variously achy, dull, sharp, shooting, burning, electric, gnawing and stabbing."  (*Id*.)  On November 8, 2012 Dr. Minard recorded a one-page treatment note.  (R. at 424.)  Plaintiff reported no improvement after physical therapy, but she reported that use of a TENS unit was "helpful."  (*Id*.)  Plaintiff also reported no improvement while taking trazodone, but she did report unspecified negative side effects.  (*Id*.)  According to Dr. Minard, Plaintiff reported "diffuse pain and stiffness," but he noted that her gait was "normal."  (*Id*.)  Dr. Minard reported no swollen joints.  (*Id*.)

On January 22, 2014, Plaintiff saw Dr. Widalys Adames-Mendez.  (R. at 471-473.)  During her visit, Plaintiff reported that her pain symptoms worsen in cold weather.  (R. at 471.)  Plaintiff reported no side effects from her medications.  (*Id*.)

5

**B. Wexner Medical Center**

On January 7, 2013 Plaintiff saw Dr. Hareth Madhoun, DO at the Ohio State University Rheumatology Carepoint East. (R. at 425-428.) According to Dr. Madhoun, Plaintiff reported "diffuse pain in her hands, wrists, neck, low back, and knees. (R. at 425.) Plaintiff also reported that her symptoms become progressively worse throughout the day, but "especially in the evenings." (*Id*.) Plaintiff told Dr. Madhoun that her morning stiffness usually lasts less than one hour and that she has swelling in her fingers and ankles. (*Id*.) Dr. Madhoun noted that Plaintiff believed that her prescription medications lyrica and flexeril were helping. (*Id*.) Dr. Madhoun's examination revealed "no evidence of synovitis or any tenderness to palpation in any of the joints." (R. at 427.) Dr. Madhoun noted that although Plaintiff had "[m]ultiple tender points consistent with fibromyalgia," she also had "excellent" upper and lower extremity strength. (*Id*.) Dr. Madhoun emphasized the importance of exercise in treating Plaintiff's condition. (*Id*.)

**C. LP Services, Inc.**

On April 23, 2013 Plaintiff had a counseling session with Carla Rosler, PMHCNS-BC. Ms. Rosler noted that Plaintiff "talks almost non-stop about her pain and things that overwhelm her." (R. at 450.)

## IV.   THE ADMINISTRATIVE DECISION

On May 21, 2014, the ALJ issued her decision. (R. at 12.) The ALJ found that Plaintiff met the insured status requirements through June 30, 2013. (R. at 14.) At step one of the

6

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her alleged onset date of September 12, 2008.  (*Id.*)

The ALJ found that Plaintiff had the severe impairment of fibromyalgia.  (*Id.*) The ALJ also found that Plaintiff had several other medically determinable impairments, but that none of them qualified as a severe impairment. (R. at 15.)  The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 16.)  At step four of the sequential evaluation process, the ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs.  She can never climb ladders, ropes, or

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

scaffolds. She can have frequent exposure to extreme heat, cold, humidity, and wetness."

(R. at 17.) In reaching this determination with respect to Plaintiff's impairment arising from her fibromyalgia, the ALJ found that Plaintiff's "determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 18.)

The ALJ determined that Plaintiff can perform her past work as a home health aide and childcare provider. (R. at 19.) The ALJ therefore concluded that Plaintiff is not disabled under the Social Security Act. (R. at 20-21.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The Sixth Circuit has explained that fibromyalgia "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817 (6th Cir. 1988). Further, Social Security Ruling 12–2p, which provides guidance on how the agency both develops "evidence to establish that a person has a medically determinable impairment of fibromyalgia" and evaluates fibromyalgia in disability claims, describes fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." 3 SSR 12–2p, 2012 WL 3017612 (July 25, 2012).

The Sixth Circuit has recognized that "disability claims related to fibromyalgia are related to the *symptoms* associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862 (6th Cir. 2011) (emphasis in original) (citation omitted). Where the symptoms and not the underlying condition form the basis of the disability

9

claim, a two-part analysis is used in evaluating complaints of disabling pain. *Kalmbach*, 409 F. App'x at 862.

First, the ALJ must determine whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Second, if the ALJ finds that such impairment exists, then she must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Kalmbach*, 409 F. App'x at 863. Pursuant to SSR 96-7p, the ALJ must evaluate seven factors in determining credibility:

> When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186 (July 2, 1996).

SSR 96–7p tasks the ALJ with explaining his credibility determination with sufficient specificity as "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248. As the Sixth Circuit noted in *Rogers*: "[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Id*. (citation omitted).

The Sixth Circuit has recognized that fibromyalgia is not amenable to objective diagnosis and that standard clinical tests are "not highly relevant in diagnosing [fibromyalgia] or its severity." *Preston*, 854 F.2d at 820. The *Preston* Court explained: "In stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in [fibromyalgia] patients." *Id*. at 817–18.

## VI. ANALYSIS

In her Statement of Errors, Plaintiff contends the ALJ's credibility analysis with respect to Plaintiff's subjective allegations of fibromyalgia pain was deficient. (ECF No. 13 at 10.) Specifically, Plaintiff argues that the ALJ inappropriately relied "on the lack of objective medical evidence to discount [Plaintiff's] allegations of pain and fatigue and her significant limitations," requiring reversal and remand. (ECF No. 13 at 12.)

A. **Plaintiff's Credibility**

The ALJ noted that Plaintiff testified that her doctors limited her to lifting no more than five pounds, although the restriction is not in the record. (*Id*.) The ALJ also noted that Plaintiff's counsel acknowledged the absence of any such restriction in the record. (*Id*.) Following completion of the administrative hearing, the ALJ held the record open for 10 days due to other, outstanding evidence. (R. at 533.) Plaintiff did not thereafter supplement the record to document her claimed restriction. The ALJ also noted that he gave only partial weight to the state agency medical consultants, who concluded that Plaintiff's impairment was not severe. (R. at 19.)

An ALJ's "findings based on the credibility of the applicant are to be accorded great weight and deference." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Such findings must, however, be supported by substantial evidence. *Id*. A claimant's credibility may be discounted, "to a certain degree," where an ALJ "finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id*. In the instant case, it appears that the ALJ discounted all of Plaintiff's testimony, at least in part, because of her false, or at least unsupported, statement about her lifting limitations.

As the Sixth Circuit has noted, however, "[w]henever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Rogers*, 486 F.3d at 247. Even if Plaintiff's unsupported statement can be said to address her "symptoms, or their intensity and persistence," Plaintiff's testimony, taken as a whole, in no other way contradicts the record

12

evidence. Her subjective allegations regarding her pain symptoms were consistent throughout her treatment by various physicians and counselors. The Undersigned finds, therefore, that Plaintiff's unsupported claim regarding her lifting limitation, in itself, is not sufficient to discount the credibility of her subjective allegations of fibromyalgia pain.

**B. The ALJ's 96-7p Factor Analysis**

In his opinion, the ALJ discussed Plaintiff's daily activities and noted that Plaintiff is able to "take care of bills, appointments, phone calls, etc., for both her and her husband." (R. at 17.) The ALJ also observed that Plaintiff helps her husband by reminding him to take his medications and that "she performs household chores, shops once a week, and goes for walks when weather permits." (*Id*.) The ALJ quoted Dr. Leonhard who recorded Plaintiff's statement during treatment that "I do the majority of household stuff and just have my husband sign things." (R. at 18, 359.) The ALJ further noted that Dr. Leonhard's report indicates that Plaintiff stated

> she is able to care for her own grooming and hygiene, perform household chores, care for pets and family members, prepare meals, shop for groceries, and pay bills. She reported that in her free time she watches television, occasionally listens to music, reads, and occasionally attends church. She reported she is able to use a computer, and spends time with family members and her few friends. Hobbies were reported as reading and walking.

*Id*. The ALJ also discussed Plaintiff's trips to the library. (R. at 17.)

In discussing the location, duration, frequency, and intensity of Plaintiff's pain, the ALJ acknowledged that Plaintiff "had multiple tender points consistent with fibromyalgia." (R. at 18.) The ALJ also noted that Plaintiff reports "she has pain all over, is unable to grip, and falls." (R. at 17.) Turning to the factors that precipitate and aggravate Plaintiff's symptoms, the ALJ noted that Plaintiff claimed "her symptoms are exacerbated by exertion and weather." (R. at 17, 18.)

In discussing the type, dosage, effectiveness, and side effects of any medication Plaintiff has taken to alleviate pain, the ALJ noted that Plaintiff's reported side effects included digestive problems and drowsiness, although Plaintiff reported no side effects at her January 22, 2014, appointment with Dr. Adames-Mendez.  (R. at 19, 471-473.)   The ALJ also discussed treatment and measures, other than medication, that Plaintiff used or received, including her prescribed exercise regimen.  (R. at 18.)  The ALJ, however, did not explicitly discuss other factors concerning Plaintiff's functional limitations and restrictions due to pain.

Although the ALJ's discussion of the 96-7p factors is, at times, cursory and unsystematic, a fair review of the entire written opinion reveals that the ALJ did address all of the relevant factors except the seventh.  Accordingly, the Undersigned finds that the ALJ did consider all of the factors in his making his credibility determination.  The Court's analysis of the legal question at issue in the present case, however, does not end with this preliminary conclusion.  As noted above, the Sixth Circuit explained in *Rogers*: "[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Rogers*, 486 F.3d at 248.  In determining disability claims based on fibromyalgia, however, objective diagnoses and standard clinical tests are "not highly relevant in diagnosing [fibromyalgia] or its severity." *Preston*, 854 F.2d at 820.  The Undersigned, therefore, must determine whether the ALJ made her finding by applying the correct or legal standard or, as Plaintiff claims, by an impermissible reliance on objective clinical results.

14

### C. The Use of Objective Evidence in the ALJ's Credibility Determination

In discussing her credibility finding, the ALJ states plainly that Plaintiff's "subjective allegations are disproportionate to objective findings." (R. at 18.) On multiple occasions, the ALJ cites the objective results of various diagnostic exams. (*Id.*) Specifically, the ALJ cites strength tests and other physical examinations. (*Id.*) Indeed, the gravamen of the ALJ's discussion is that Plaintiff's subjective complaints are contradicted by the objective medical evidence. The structure of the ALJ's written opinion lends credence to this interpretation. Immediately after introducing his analysis with the conclusion that "claimant's statements . . . are not entirely credible for the reasons explained in this decision," the ALJ declares that "the subjective allegations are disproportionate to objective findings." (*Id.*) The ALJ also states that Plaintiff's subjective claims of "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." (*Id.*) Although the ALJ's opinion mentions facts related to all of the 96-7p factors, the bulk of the analysis focuses on the disparities between Plaintiff's subjective allegations and the objective medical evidence.

It is possible that the ALJ's opinion is merely unartfully drafted and that an alternative analysis would come to the same conclusion. It is impossible, however, to conclude from the ALJ's actual written decision that her determination "was made pursuant to [the] proper legal standard." *Rabbers*, 582 F. 3d at 651. Accordingly, the Undersigned concludes that the ALJ improperly used objective clinical results in making her credibility determination.

### D. The ALJ's Error is not Harmless

The ALJ's failure to apply the proper legal standard in this case is not harmless. An error is harmless only if remanding the matter to the agency "would be an idle and useless formality"

15

because "there is [no] reason to believe that [it] might lead to a different result." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 520 (6th Cir. 2011) (citing *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x. 171, 173 (6th Cir. 2004)). As explained above, however, the Undersigned cannot conclude from the written decision that the ALJ came to her conclusion regarding Plaintiff's credibility by proper application of the appropriate legal standard. The ALJ's written opinion improperly relies on an absence of objective medical evidence to discount Plaintiff's subjective allegations of fibromyalgia pain. The Undersigned, therefore, finds that the ALJ's failure to apply the proper legal standard was not harmless.

## VII. CONCLUSION

For the reasons explained above, the Undersigned finds that the ALJ improperly relied on objective evidence to make the credibility determination regarding Plaintiff's subjective allegations of fibromyalgia pain. Consequently, the Undersigned cannot conclude that the ALJ's disability determination was made according to the correct legal standard. Any error in this regard, therefore, is not harmless. It is, therefore, **RECOMMENDED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** to the Commissioner and the ALJ under Sentence Four of § 405(g).

## V. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:  January 22, 2016                             */s/ Elizabeth A. Preston Deavers*
                                                    ELIZABETH A. PRESTON DEAVERS
                                                    UNITED STATES MAGISTRATE JUDGE

17